UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANDRES MONTERO, individually, and MONTERO & ASSOCIATES, P.A., a Florida Corporation,

Plaintiffs,

v.

JAIME SUAREZ, individually; SUAREZ & ASSOCIATES, P.A., a Florida Corporation,

Defendants.
_______________________________________/

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND OTHER RELIEF**
**Jury Trial Demanded**

Plaintiffs, ANDRES MONTERO, individually (hereinafter "MONTERO"), and MONTERO & ASSOCIATES, a Florida Corporation (herein "M&A") (collectively "Plaintiffs"), by and through their undersigned counsel and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants, JAIME SUAREZ, individually (herein "SUAREZ"), and SUAREZ & ASSOCIATES, a Florida Corporation (herein "S&A"), (collectively "Defendants"), seeking injunctive relief and damages, and state:

**The Parties**

1. At all times material, MONTERO was and is an attorney licensed to practice law in the State of Florida and a resident of Miami-Dade County, Florida.

2. At all times material, M&A was and is corporation with its principal place of business in Miami-Dade County, Florida. MONTERO practices law through M&A.

3. At all times material hereto, SUAREZ was and is an attorney licensed to practice law in the State of Florida and a resident of Broward County, Florida.

4. S&A was and is a corporation with its principal place of business in Miami-Dade County, Florida.

**Subject Matter Jurisdiction**

5. This Court has subject matter jurisdiction over this action because Plaintiffs seek relief under the federal Lanham Act, 15 U.S.C. §§1051 et seq.

6. This Court may exercise supplemental jurisdiction over Plaintiffs' causes of action arising under Florida law pursuant to 28 U.S.C. §1367, because such causes of action form part of the same case or controversy over which this Court has original jurisdiction.

**Venue**

7. Venue is proper in the Southern District of Florida under 28 U.S.C. §1391, because the Defendants reside in Florida within the Southern District of Florida, and a substantial part of the events giving rise to the claim occurred in this district.

**BACKGROUND**

8. For approximately twenty-two years, MONTERO and SUAREZ practiced law together under the name "Law Offices of Suarez & Montero" (hereinafter "the FIRM") a fictitious name (i.e. d/b/a) registered in Florida.

9. During his time with the FIRM, MONTERO led the FIRM's Litigation Department. Over more than two decades, MONTERO built a professional reputation, and the goodwill associated with his name, in Miami-Dade County and throughout South Florida.

10. Most recently, the professional relationship between MONTERO and SUAREZ was governed by the Suarez & Montero Partnership Agreement executed on November 28, 2017, and the Suarez & Montero Partnership Agreement with Addendum dated July 21, 2023 (collectively, the "Agreement"). Under the Agreement, MONTERO and M&A, on the one hand,

and SUAREZ and S&A, on the other, agreed that their practices would operate under the registered fictitious name "Law Offices of Suarez & Montero." MONTERO and SUAREZ each signed the Agreement individually and on behalf of his own firm. A copy of the Agreement is attached hereto as **Exhibit "A."**

11. Section 2.0 of the Agreement provides that SUAREZ and S&A were required to pay MONTERO and M&A a percentage of fees on pre-suit settlements.

12. MONTERO and M&A performed all of their obligations under the Agreement.

13. SUAREZ unilaterally terminated and/or repudiated the Agreement. On multiple occasions, SUAREZ told MONTERO, in person, via text messages, and emails, that he was terminating the Agreement, that he was rebranding the FIRM, and that he would stop marketing it. These statements include the following:

| | | |
|---|---|---|
| 7/1/2026 9:47:21 AM | Text | Effective immediately, I will no longer be advancing any litigation costs. |
| 7/1/2026 9:48:40 AM | Text | Effective immediately, I will no longer be advancing any litigation costs.<br><br>If I am making zero from litigation, there is no reason for me to continue funding litigation expenses.<br><br>Going forward, you will be responsible for the malpractice insurance premiums for your attorneys, including Johanna, Ariana, and yourself.<br><br>If I am receiving nothing from litigation, there is no justification for me to continue paying litigation-related expenses. Those costs should be borne by the litigation department. |
| 7/2/2026 4:57:38 PM | Text | I just received a $100,000 check, and I kept the entire 33⅓% fee instead of paying you your share. If you need the money now, just deduct it from the litigation fees you owe me. I need to make payroll.<br>Thanks. |
| 7/8/2026 10:13:29 AM | Text | Until we figure out exactly what each of us owes the other, I'm going to pause the 25% payments. Once we reconcile the |

| | | |
|---|---|---|
| | | accounting and determine the correct balance, I'll resume making whatever payments are actually due. |
| 7/13/2026 12:49:01 PM | Text | Until we resolve this, I'm not comfortable moving forward as though everything is business as usual. |
| 7/16/2026 10:00:03 AM | Text | I see only two ways to move forward without any further discussions.<br>Option 1<br>You pay me $1,000,000.<br>[…]<br>Option 2 — Buy the Firm and Assume the Risk<br>If you want me completely out of the business, then buy the firm from me<br>for $20,000,000. |
| 7/18/2026 11:43:22 AM | Text | I withdraw my previous proposal.<br><br>If we are going to resolve our differences, my proposal is now $2,000,000.<br><br>The rainmaker made it rain. If you want the rainmaker to dance again, the price is now $2 million. Without the incentive to dance, there is no rain. Without the rain, there are no clients. Without the clients, there are no cases. Without the cases, there are no fees. |
| 8/12/2026 9:11:12 AM | Text | We need to get a signed agreement in place.<br>[…]<br>The other issue is litigation costs. Going forward, if you and the Litigation Department are handling the litigation and receiving the litigation fee, then the costs associated with operating and litigating those cases need to be your responsibility. I am not going to continue funding litigation costs on cases being handled by your department. |
| 8/24/26 1:47 PM | Email | I think the cleanest and fairest way to move forward is to base the arrangement on who pays for the advertising that generates each case.<br>Since the 25% payment from my Pre-Suit to you has already stopped, you would be responsible for paying for any advertising you choose to run. Any case directly generated by advertising you pay for would be attributed to you.<br>[..]<br>For cases generated by your advertising, I would receive 25% of the legal fee and would work on those cases whether they resolve during Pre-Suit or ultimately proceed to Litigation. You would receive the remaining economics under the agreed structure.<br>For cases generated by your advertising, I would continue handling Pre-Suit. If I resolve one of those cases, I would |

| | | |
|---|---|---|
| | | retain the Pre-Suit fee and pay you nothing, as we are doing now. This reflects the substantial advertising investment I have made over the years.<br>[…]<br>Existing websites, SEO, organic searches, existing phone numbers, repeat clients and leads generated through the advertising infrastructure I have already funded would remain on my side, since you have not contributed to the cost of building or maintaining that infrastructure.<br>[…] |
| 9/27/2026 11:42:00 AM | Text | I reviewed the proposed agreement, and I don't agree with it.<br><br>At this point, I think the cleanest path forward is for me to rebuild and rebrand. I intend to change my name to Jaime E. Suarez-Montero, but the law firm itself will operate as Jaime E. Suarez, P.A. The Suarez & Montero firm name and branding will be removed from my practice. |
| 9/27/2026 12:03:26 PM | Text | I will start the rebranding next week. |
| 9/27/2026 5:54 PM | Email | I have invested in advertising and generating cases for approximately 20 years. Beginning next week, I will be discontinuing my advertising.<br><br>You are free to invest in advertising for the remainder of our existing agreement and advertise your name under the Suarez & Montero brand for purposes of generating business under our existing arrangement. |
| 9/29/2026 9:16:27 AM | Text | I have started the complete rebranding process.<br><br>The website has already been rebranded, and the Bar registration has also been changed. I suggest that you begin doing the same on your side.<br><br>Going forward, I am prepared to continue referring cases to Montero & Associates and to structure any fee division in compliance with the applicable Bar rules. Each client can sign the appropriate retainer identifying your firm and any agreed fee division, including my 25% interest where applicable. Those documents can be signed from my office and forwarded directly to your firm.<br><br>At the same time, Suarez & Montero will disappear from my advertising. I am removing the Suarez & Montero branding from the marketing I control and replacing it with my own name and branding.<br><br>[…] |

| | | |
|---|---|---|
| | | For now, I am willing to continue sending appropriate cases to Montero & Associates on a gentleman's-handshake basis for as long as you personally continue managing Montero & Associates. You may also continue using the office while you are actively practicing through Montero & Associates and personally involved in the operation.<br><br>Suarez & Montero was essentially the vehicle we used so that our two separate firms could operate together under a common brand. That brand is mine, and it will no longer be the brand I advertise.<br><br>I have already notified the Bar of the name change, and that process has been completed. |
| 9/30/2026 7:50 PM | Email | If the worst-case scenario is that a judge ultimately determines the 2023 agreement remains enforceable and that I must continue complying with it, I am fine with that.<br><br>In the meantime, I will move forward with advertising my own name, as I always have and my firm name, since nothing in the agreement prohibits me from doing so.<br><br>If a court later determines that any obligations under the 2023 agreement continue, I will comply with that ruling. |
| 10/1/2026 10:21:44 AM | Text | I will not continue as we were. A retainer will be needed. |
| 10/1/2026 10:58:42 AM | Text | If the worst-case scenario is that a judge ultimately determines the 2023 agreement remains enforceable and that I must continue complying with it, I am fine with that.<br><br>In the meantime, I will move forward with advertising my own name, as I always have and my firm name, since nothing in the agreement prohibits me from doing so.<br><br>If a court later determines that any obligations under the 2023 agreement continue, I will comply with that ruling. |

14. SUAREZ did what he said he would do. He rebranded his practice, including by rebranding the FIRM's Google Business, Yelp, Avvo, and Trustindex profiles to "Law office[s] of Jaime Suarez" on or about October 6, 2026, and he stopped marketing the FIRM.

15. SUAREZ's statements were positive, unconditional, and unequivocal declarations that he would not perform the Agreement, and his conduct confirmed them.

16. MONTERO has not terminated, rescinded, abandoned, or otherwise relinquished any right arising under the Agreement.

17. Beginning in or about July 2026, SUAREZ and S&A also stopped paying MONTERO and M&A the pre-suit portion of the payments due under the Agreement. As of the date of this Verified Complaint, SUAREZ and S&A have failed to pay agreed upon referral fees and at least $239,730.53 in pre-suit payments. SUAREZ admits that he owes MONTERO and M&A for the pre-suit portion of the payments due under the Agreement from July 2026 to the present. A copy of the Suarez' October 20, 2026, email and the redacted fee schedule spreadsheet are attached hereto as **Exhibit "B."**

18. SUAREZ and S&A have continued to use MONTERO's name, image, or likeness in connection with SUAREZ's sole practice.

19. MONTERO has never consented to SUAREZ's use of MONTERO's name, image, or likeness in connection with SUAREZ's sole practice. To the extent any prior consent could be argued to have existed, MONTERO expressly revoked it in writing on October 12, 2026 via a Cease & Desist Demand. A copy of the Cease & Desist Demand (with exhibits) is attached hereto as **Exhibit "C."**

20. As used herein, the "Montero Identifiers" means MONTERO's name, in whole or in part (including the surname "Montero" standing alone and the names "Suarez & Montero," "Suarez and Montero," and "Suarez-Montero"), initials, nicknames, signature, image, photograph, voice, likeness, professional identity, biography, credentials, reputation, case results, testimonials, the FIRM's client reviews, and the goodwill associated with MONTERO and the FIRM.

21. After SUAREZ terminated the Agreement, SUAREZ continues to use the Montero Identifiers to market his sole practice and to generate new client leads. Representative examples of these uses are attached hereto as **Composite Exhibit "D."**

22. SUAREZ has stated that he and his wife, Sonia Suarez, maintain "over 500 landing pages under separate domain names." Upon information and belief, the uses identified below are only a portion of Defendants' use of the Montero Identifiers in domain names, search engine optimization ("SEO") keywords, artificial intelligence optimization ("AIO") key words, and related content.

23. **Domain Names.** SUAREZ owns and operates the following domain names, each of which incorporates MONTERO's name and/or the Montero Identifiers:

a. suarezandmontero.com;
b. suarezandmonterocaraccidentlawyerinmiami.com;
c. suarez-montero.com; and
d. suarezmontero.com.

24. On multiple occasion, SUAREZ has stated that he would change his legal name to "Jaime Enrique Suarez-Montero" in an attempt to insulate himself from allegations of unlawful usurpation of the Montero Identifiers. SUAREZ has gone as far as to threaten that he would have his wife and children undergo legal name changes as well.

25. As recently as October 19, 2026, and following receipt of MONTERO's Cease and Desist Demand, SUAREZ stated, via email, "I have also considered changing my name to Jaime Enrique Suarez-Montero. This is a personal preference based on my long-standing use of "Suarez Montero," my approximately 15 years of using the email address jsuarez@suarezmontero.com, and the fact that many clients know and address me by that name. I have become accustomed to it." SUAREZ attached an inventory of several domains associated Mrs. Suarez's GoDaddy account, the majority of which undisclosed uses and associations of the Montero Identifiers with

SUAREZ, such as "jaime-suarez-montero.com", "jaimesuarezmontero.com", "jsmontero.com", "jsuarezmontero.com", "lawofficesuarezmontero.com", "suarez-montero-law.com", "suarezmonteroandassociates.com", "suarezmonteroandsuarez.com", and "suarezmonterolaw.com".

26. **Email Addresses.** SUAREZ's office continues to send and receive correspondence using addresses at the @suarezmontero.com and @suarez-montero.com domains and the address suarezmonterofax@gmail.com. The @suarezmontero.com domain appears on SUAREZ's Florida Bar Profile.

27. **Fictitious Name Registrations.** The fictitious names "Law Offices of Suarez & Montero" and "Suarez and Montero Car Accident Lawyer In Miami.Com" remain registered with the Florida Department of State, Division of Corporations. [Registration Number: G15000113776, Status: Active, Owner: Suarez & Associates, PA, Expiration Date: 12/31/2030; Registration Number: G18000117681, Status: Active, Owner: Suarez & Associates, PA, Expiration Date: 12/31/2028.]

28. **Additional Names.** SUAREZ uses the following names with third parties:

a. "Law Office of Suarez and Montero PA Trust Account";
b. "Suarez & Montero LLC";
c. "Suarez & Montero Law"; and
d. "Suarez & Montero, P.A."

29. **Online Business Listings.** SUAREZ maintains and controls the following online listings, each of which uses the Montero Identifiers:

a. a Google Business Profile that operated under the name "Suarez And Montero Car Accident Lawyer Miami .Com";

b. a Yelp listing for "Suarez and Montero Car Accident Lawyer Miami.com" (yelp.com/biz/suarez-and-montero-car-accident-lawyer-miami-com-miami-23);

c. a LinkedIn page for "Law Offices of Suarez and Montero" (linkedin.com/company/law-offices-of-suarez-and-montero);

d. a Facebook page (facebook.com/suarezandmonterocaraccidentlawyermiamicom);

e. a YouTube channel titled "Suarez And Montero Car Accident Lawyer Miami" (@suarezandmonterocaracciden5966);

f. an X (formerly Twitter) account titled "Law Offices of Suarez & Montero" (x.com/OfficesSuarez); and

g. a Trustindex review page titled "Suarez And Montero Car Accident Lawyer Miami .Com Reviews" (trustindex.io/reviews/jaime-suarez.com).

30. On or about October 6, 2026, SUAREZ changed the name of the Google Business Profile to "Law office[s] of Jaime Suarez." It remains the same listing, at the same location, and it retains every review and rating earned under the Suarez & Montero name. Those reviews now promote SUAREZ's sole practice.

31. The FIRM's reviews were written by clients who retained the FIRM, about services the FIRM provided. By keeping those reviews on a listing for his sole practice, SUAREZ presents the FIRM's reputation, including MONTERO's share of it, as his own. Prospective clients who view the listing are led to believe that the reviews reflect SUAREZ's sole practice, which they do not.

32. The same is true of every other platform on which reviews, ratings, or recommendations earned by the FIRM now appear in connection with SUAREZ's sole practice.

33. **Social Media.** SUAREZ's Instagram accounts (including @786lawyers, @786abogados, @305lawyers, @645lawyers, @645abogado, @786lawyersblog, @786abogadoblog, @abogadoblogs, 954abogado, 305abogado, and @miamimarketingmagician), Facebook account, and other social media accounts contain posts that:

a. display photographs of Suarez & Montero signage and stationery;

b. feature Suarez & Montero Google reviews;

c. feature Suarez & Montero blog posts;

d. identify MONTERO as the head of SUAREZ's litigation department and as SUAREZ's business partner;

e. display photographs of Suarez & Montero clients; and

f. display photographs of Suarez & Montero clients holding settlement checks or awards bearing the Suarez & Montero name.

34. SUAREZ's Instagram post describing MONTERO as SUAREZ's business partner and the head of his litigation department. That is false. MONTERO is not SUAREZ's business partner and does not head any department of SUAREZ's sole practice. A copy of the Instagram post is attached hereto as **Exhibit "E."**

35. **Printed Materials and Signage.** SUAREZ continues to use "Law Offices of Suarez & Montero" on retainer agreements, letterhead, envelopes, business cards, and email signature blocks, and "Law Offices of Suarez & Montero, CarAccidentLawyerInMiami.com" on office signage, letterhead, envelopes, and business cards.

36. **Publications.** Publications, including Google, attribute 4.9-to-five-star client reviews to the FIRM, not to SUAREZ's sole practice.

37. **Use Outside of Florida.** SUAREZ has also used "Law Office of Suarez & Montero" or "Suarez & Montero, P.A." in Texas, Washington, D.C., and New York, in advertising, directory listings, and business registrations directed at prospective clients in those jurisdictions.

38. **Vendor Accounts.** Contracts, accounts, and billing relationships remain open in the name of Suarez & Montero with vendors including but not limited to Westlaw and Clear Channel. Under Section 5.2 of the Agreement, SUAREZ is responsible for payment of "all office supplies, utilities, and costs."

39. Prior to the separation, the FIRM owned, operated, and maintained commercial business listings on both Google Business Profile and Yelp (collectively, the "Business Profiles") which operate in interstate commerce.

40. On or about October 6, 2026, SUAREZ unilaterally altered and rebranded the FIRM's Business Profiles from the "Law Offices of Suarez & Montero" to his sole practice, "Law Offices of Jaime Suarez," adding photos of computer-generated signage bearing the name of his sole practice superimposed over the FIRM's existing office signage, thereby usurping and appropriating the FIRM's accumulated client reviews, star ratings, and online goodwill for his sole financial benefit.

41. The Yelp Profile's permanent web address (URL) continues to incorporate the Montero Identifier; and continues to display photographs of MONTERO, as well as photographs of office signage bearing the FIRM name.

42. The Google Business Profile was further unilaterally altered by the inclusion of photos uploaded by the owner, "Suarez and Montero Car Accident Lawyer Miami.com," which depict the Sunbiz fictitious business name registration for "Law Office of Jaime E. Suarez, P.A.," and a photo of SUAREZ posing at the office entrance next to a makeshift paper sign for "Law Offices of Suarez & Associates."

43. The Google Business Profile, under the heading "Reviews from the web", contains links to third-party websites such as Avvo, TrustIndex.io, and Experience.com (hereafter "Third-Party Websites"), all of which contain uses of the Montero Identifiers or the FIRM name.

44. In addition to unilaterally rebranding the Business Profiles to his sole practice's name, SUAREZ deliberately retained the Montero Identifiers across multiple platforms to attract prospective clients searching for MONTERO or the FIRM and to allow his sole practice to benefit from the social proof created by the association between the Business Profiles and the Third-Party Websites.

45. Numerous client reviews on the Business Profiles and Third-Party Websites explicitly name, praise, and recommend MONTERO and the FIRM for legal representation. Every client review posted on the Business Profiles or Third-Party Websites reflects legal services rendered by the FIRM collectively or by SUAREZ or MONTERO individually on behalf of the FIRM.

46. Accordingly, the cumulative ratings, client testimonials, and goodwill encompassed in the Business Profiles and Third-Party Websites belong to the FIRM and reflect MONTERO's professional reputation and legal work with the FIRM, not SUAREZ's sole practice.

47. Further, while retaining the Montero Identifiers on the Business Profiles and Third-Party Websites to draw prospective clients, SUAREZ converted the underlying destination of the profiles' contact and conversion mechanisms to exclusively serve his sole practice. Specifically, although the profiles continue to link to one of the FIRM's website addresses and display the FIRM's telephone number, on or about October 7, 2026, SUAREZ unilaterally began removing all references to MONTERO and the FIRM from the destination website and rebranded it solely for "Law Offices of Jaime Suarez". As a result, every prospective client who clicks the website link or calls the listed number from the Business Profiles or Third-Party Websites are routed exclusively to SUAREZ's sole practice.

48. SUAREZ's decision to rebrand the Google Business and Yelp Profile shows that SUAREZ knows he may not use the Montero Identifiers. Yet every other use identified above remains in place. SUAREZ's conduct is knowing and willful.

49. In addition to altering the Business Profiles and Third-Party Websites, SUAREZ has engaged in an ongoing pattern and practice across multiple social media accounts of

publishing, maintaining, and utilizing photographs of the FIRM's clients to advertise and promote his sole practice.

50. In these social media posts, SUAREZ features photographs of clients of the FIRM holding FIRM stationery containing settlement checks while standing directly in front of the FIRM's office signage prominently displaying the Montero Identifier (e.g., "Law Offices of Suarez & Montero").

51. Notwithstanding the prominent display of the Montero Identifier and FIRM stationery in these photographs, SUAREZ publishes and maintains them alongside promotional captions and hashtags advertising himself individually and his sole practice: "Each client I represent becomes part of my 5-page, 5-star family album… Remember: 'Yes, I want Jaime Suarez to be my accident lawyer!'" accompanied by hashtags including "#JaimeSuarez" and "#jaimesuarezabogado".

52. By publishing and continuing to maintain these posts after the separation to solicit prospective clients for his sole practice, SUAREZ is knowingly and publicly displaying the Montero Identifier for direct commercial and advertising purposes without MONTERO's express written or oral consent, while falsely attributing the FIRM's and MONTERO's legal representation and settlement results to SUAREZ's sole practice.

53. Similarly, SUAREZ has published and continues to maintain numerous videos and reels across his social media accounts in which SUAREZ displays stacks of insurance settlement checks recovered on behalf of clients of the FIRM.

54. In these videos, SUAREZ places yellow adhesive notes over portions of the checks bearing his personal branding and slogans (such as "786 Abogado," "5 Star Lawyer," and "#GetYouPaid") while leaving clearly visible, and zooming in on, the payee line identifying the

"Suarez and Montero Trust Account". SUAREZ pairs these videos with captions boasting of the total settlement amounts recovered (e.g., "Add another $275,000.00 to the total with today's home run: $925,000.00") alongside hashtags promoting himself individually, including "#JaimeSuarez" and "#jaimesuarezabogado".

55. By continuing to display and promote these videos after the separation without MONTERO's express written or oral consent, SUAREZ is publicly using the Montero Identifier, specifically the "Suarez and Montero Trust Account" designation visible on the settlement checks, for direct commercial and advertising purposes, while misappropriating the FIRM's financial recoveries and goodwill to market his sole practice.

56. Defendants' conduct trades directly on the professional reputation that MONTERO spent more than two decades building. It misleads members of the public into believing that MONTERO is associated with SUAREZ's sole practice and is available to represent them through it. It also misleads the public into believing that the reviews were earned by or intended for SUAREZ's sole practice.

57. On October 12, 2026, MONTERO, through counsel, sent SUAREZ a cease and desist letter by email and certified mail demanding that Defendants cease all use of the Montero Identifiers and complete the remedial steps listed in the letter within five (5) days. See **Exhibit "C."**

58. The five-day deadline expired on October 17, 2026. As of the date of this Verified Complaint, the uses described above remain active.

59. Beginning on October 15, 2026, pursuant to the Florida Bar requirements, MONTERO sent the FIRM's clients a letter advising them that there had been a change to the FIRM's composition and asking each client to elect whether to remain with MONTERO, to be

represented by SUAREZ, or to be represented by other counsel (the "Election Letter").[1] A copy of the Election Letter, derived from the Florida Bar approved templates, with client information redacted, is attached as **Exhibit "F."**

60. After receiving MONTERO's Election Letter, several FIRM clients did not simply make their election. Instead, they called the former FIRM asking to speak with MONTERO.[2]

61. SUAREZ has admitted that he set those clients up for meetings with him. SUAREZ claims that, at those meetings, he tells the clients that they should stay with MONTERO. A copy of the email from SUAREZ, dated October 19, 2026, at 12:32:21 PM, is attached hereto as **Exhibit "G."**

62. These clients' calls to SUAREZ show that the FIRM's own clients cannot tell where the FIRM ends and SUAREZ's sole practice begins. Clients who received a letter from MONTERO turned to SUAREZ, who continues to operate under the "Suarez & Montero" name, from "Suarez & Montero" email addresses, phone numbers, and listings, rather than simply making their election. Even crediting SUAREZ's claim that he tells those clients to stay with MONTERO, the fact that SUAREZ must explain to the FIRM's clients which lawyer is which confirms the confusion his continued use of MONTERO's name creates.

63. When met with actual confusion from clients, rather than distinguishing himself from MONTERO or clarifying the dissolution of the FIRM, SUAREZ actively cultivated and capitalized upon client confusion surrounding the Montero Identifiers.

---

[1] That letter was sent after bona fide attempts to reach an agreement with SUAREZ to send a joint communication to the FIRM's clients failed.

[2] To protect client confidentiality, Plaintiffs identify these clients as Client A, Client B, and so on, and will disclose their identities to the Court in camera upon request.

64. The resulting client confusion caused by SUAREZ's continued use of the Montero Identifiers is underscored by SUAREZ's own recordings and records of communication with FIRM clients.

65. Specifically, even after MONTERO transmitted formal Election Letters notifying clients that MONTERO and SUAREZ were no longer jointly operating the FIRM, SUAREZ falsely represented to clients that he and MONTERO were not separating.

66. On November 12, 2026, SUAREZ recorded an in-person interview with a client conducted in Spanish, a video recording of which SUAREZ produced, capturing the following exchange (translated into English):

| | |
|---|---|
| Suarez: | One question that I have for you: the reason you came to see me today was for what reason? |
| Client: | Well, because I received an email with this letter where it says I have to sort of decide between one lawyer and the other, and I didn't know there were two lawyers here. I thought it was you, Jaime Suarez Montero. |
| Suarez: | Oh, so you thought my name was |
| Client: | ...Jaime Suarez Montero. |
| | […] |
| Suarez: | Um, if—when we finish the case and you leave us a review and you say, "The lawyer treated me very well and was very professional." |
| Client: | Yes. Yes. |
| Suarez: | Okay. Who are you referring to? |
| Client: | To Jaime Suarez, who is the lawyer I've been dealing with. |
| Suarez: | Okay. If you say, "The team at the Suárez y Montero law firm… |
| Client: | Uh-huh |
| Suarez: | ...okay, worked very well for me." Who do you think that is? Who was it? |
| Client: | Jaime Suarez Montero. To me, it was Jaime Suarez Montero; I haven't met anyone else. |

67. Furthermore, when clients directly addressed or referred to SUAREZ under the mistaken belief that his name was "Jaime Suarez Montero," SUAREZ deliberately failed to correct the misconception or clarify MONTERO's separate status, thereby permitting and exploiting the false impression that SUAREZ embodies or is associated with the FIRM and MONTERO.

68. One FIRM client (the "Retained Client") received MONTERO's Election Letter, elected to be represented by MONTERO, and on or about October 19, 2026, signed a retainer agreement with M&A. A copy of the signed election letter and retainer agreement dated October 19, 2026, is attached hereto as **Exhibit "H."**

69. SUAREZ knew that the Retained Client had elected MONTERO and had signed a retainer agreement because the Retained Client told him so.

70. Despite that knowledge, on or about October 20, 2026, SUAREZ called the Retained Client and required him to come in for a meeting to discuss his election of counsel.

71. At that meeting, at SUAREZ's office, SUAREZ prepared an affidavit for the Retained Client's signature and required the Retained Client to resign the Election Letter in his presence and the presence of a notary. The Retained Client did not know why he needed to sign anything. The affidavit was prepared by SUAREZ and his staff and was notarized by SUAREZ's staff. The Retained Client was not provided with a copy of the affidavit, but a copy was emailed by SUAREZ to MONTERO. Further adding to the confusion and misrepresentations being made by SUAREZ to the FIRM's clients, several of the affidavits prepared by SUAREZ have included variations of the statement "Jaime Suarez reiterated to me that they were not separating." This statement was made to clients despite the numerous emails and text message from SUAREZ to MONTERO regarding SUAREZ's unilaterally termination and/or repudiation of the Agreement, unilateral efforts to rebrand, SUAREZ's receipt of MONTERO's Cease and Desist demand, and clients receipt of the Election Letter.

72. Defendants' unauthorized use of the Montero Identifiers is ongoing. Each day, Defendants' websites, listings, social media, signage, and advertisements continue to tell prospective clients that MONTERO is affiliated with SUAREZ's sole practice.

73. All conditions precedent to the bringing of this action have occurred, been performed, or been waived.

74. Plaintiffs have engaged counsel and agreed to pay a reasonable attorney's fee. Pursuant to section 501.2105, Florida Statutes, and 15 U.S.C. § 1117(a), Defendants are obligated to pay Plaintiffs' fees in these proceedings.

**COUNT I – UNAUTHORIZED PUBLICATION OF NAME OR LIKENESS**
**(Section 540.08, Florida Statutes)**
**(By MONTERO Against SUAREZ and S&A)**

75. MONTERO realleges and incorporates by reference paragraphs 1 through 74 as if set forth fully herein.

76. MONTERO is a natural person.

77. SUAREZ and S&A have published, displayed, and otherwise publicly used MONTERO's name, photograph, and likeness, including in domain names, online business listings, social media posts, signage, printed materials, and advertisements, for purposes of trade and for commercial and advertising purposes. Specifically, they have used the Montero Identifiers to advertise and promote SUAREZ's legal services and to generate client leads for his sole practice.

78. Defendants' use of the Montero Identifiers directly promotes SUAREZ's legal services. The Montero Identifiers are not incidental to any news report, commentary, or expressive work. They appear in the advertising of SUAREZ's services and in connection with the services SUAREZ renders, and they are used because of the way they associate MONTERO's name, reputation, and goodwill with SUAREZ's sole practice.

79. Defendants' use of the Montero Identifiers in domain names, landing pages, website metadata, search engine optimization ("SEO") keywords, and paid keyword advertising is likewise a public use for advertising purposes. Defendants use MONTERO's name in these ways

to cause internet searches for MONTERO, or for the Suarez & Montero name, to return and promote SUAREZ's sole practice and to divert prospective clients looking for MONTERO to SUAREZ.

80. MONTERO did not give express written or oral consent to these uses. Any prior consent was expressly revoked on October 12, 2026.

81. None of the exceptions in section 540.08(4), Florida Statutes, applies. The uses are not bona fide news reports or presentations having a current and legitimate public interest, and MONTERO does not appear in them merely as a member of the public.

82. Section 540.08(2), Florida Statutes, authorizes MONTERO to bring an action to enjoin the unauthorized publication, printing, display, or other public use of his name and likeness, and to recover damages for any loss or injury sustained, including an amount that would have been a reasonable royalty, and punitive or exemplary damages.

83. As a direct and proximate result of the unauthorized use, MONTERO has suffered and will continue to suffer damages in an amount to be determined at trial.

WHEREFORE, MONTERO demands the following:

a. Temporary and permanent injunctive relief prohibiting SUAREZ and S&A, and all persons acting in concert with them, from publishing, displaying, or otherwise publicly using MONTERO's name, photograph, or likeness for any purpose of trade or any commercial or advertising purpose;
b. Damages for the loss and injury sustained, including an amount that would have been a reasonable royalty;
c. Punitive damages, upon application to the Court to amend the Complaint pursuant to section 768.72, Florida Statutes;
d. Costs; and
e. All other remedies available at law or equity as this Court deems just and proper.

**COUNT II – FALSE ASSOCIATION AND FALSE ENDORSEMENT**
**(Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**
**(Against SUAREZ and S&A)**

84. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 as if set forth fully herein.

85. As a result of SUAREZ's actions, MONTERO has had to use MONTERO LAW to promote his legal services.

86. MONTERO and his firm, M&A, advertise and promote their legal services, including through social media and their website, www.montero-law.com.

87. Plaintiffs own the trademarks MONTERO, MONTERO LAW and MONTERO & ASSOCIATES, as used in connection with legal services in interstate commerce, including in South Florida.

88. SUAREZ and S&A have used in commerce, in connection with the advertising and offering of legal services, words, terms, and names, including the MONTERO trademark and the Montero Identifiers, and false or misleading representations of fact.

89. Defendants advertise and offer legal services in interstate commerce, including over the internet and through advertising, directory listings, and registrations directed at prospective clients in Florida, Texas, Washington, D.C., and New York.

90. Defendants' use of the MONTERO trademark and the Montero Identifiers is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of MONTERO and M&A with SUAREZ and S&A, and as to the origin, sponsorship, or approval of SUAREZ's legal services by MONTERO. Actual confusion has already occurred: FIRM clients who received MONTERO's Election Letter called the former FIRM seeking clarification, and in

response SUAREZ feigned knowledge of the Election Letter and required that the client appear for an in-person meeting with him.

91. Despite receiving direct notice of actual client confusion, including clients addressing him as “Jaime Suarez Montero” and questioning the change in the FIRM’s operations, SUAREZ deliberately refused to correct the misconception or distinguish himself or his sole practice from the Montero Identifiers, thereby intentionally perpetuating consumer deception as to MONTERO’s affiliation with, sponsorship of, and approval of SUAREZ’s legal services.

92. Plaintiffs have a commercial interest in MONTERO’s professional reputation and in the legal services MONTERO provides through M&A. Defendants’ false association of MONTERO with SUAREZ’s sole practice injures that commercial interest by diverting prospective clients and by placing MONTERO’s reputation in SUAREZ’s hands.

93. Defendants’ conduct is knowing and willful, as shown by, among other things, SUAREZ’s rebranding of the Google Business Profile, Yelp Profile, and FIRM website, while keeping every other use in place.

94. Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to injunctive relief and to a rebuttable presumption of irreparable harm. Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover Defendants’ profits, Plaintiffs’ damages, and costs, and, because this is an exceptional case, reasonable attorney’s fees.

WHEREFORE, Plaintiffs demand the following:

a. Temporary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a);
b. Defendants’ profits, Plaintiffs’ damages, and costs pursuant to 15 U.S.C. § 1117(a);
c. Reasonable attorney’s fees pursuant to 15 U.S.C. § 1117(a); and
d. All other remedies available at law or equity as this Court deems just and proper.

**COUNT III – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Sections 501.201–.213, Florida Statutes)**
**(Against SUAREZ and S&A)**

95. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 as if set forth fully herein.

96. SUAREZ and S&A are engaged in "trade or commerce" within the meaning of section 501.203(8), Florida Statutes, because they advertise, solicit, and provide legal services to the public.

97. Defendants have engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of section 501.204(1), Florida Statutes, by, among other things: (a) advertising SUAREZ's legal services in a manner that misrepresents who is associated with his practice and who may handle a prospective client's matter; (b) falsely representing that MONTERO is SUAREZ's business partner and the head of his litigation department; and (c) presenting reviews, ratings, and testimonials earned by the FIRM as reviews of SUAREZ's sole practice.

98. Defendants' practices are likely to deceive consumers acting reasonably in the same circumstances, including prospective clients seeking legal representation.

99. Defendants' practices have injured consumers. Prospective and existing clients seeking legal representation have been, and continue to be, misled about which lawyer is associated with SUAREZ's practice and who will handle their matters. FIRM clients who received MONTERO's Election Letter contacted SUAREZ seeking MONTERO and were set up for meetings with SUAREZ. Following client's election and retention of MONTERO, SUAREZ has withheld transfer of those clients' complete files to MONTERO, interfering with the client's representation. SUAREZ has misrepresented his continued association with clients to healthcare

providers resulting in confusion, delays in client treatment, and interference with negotiations of medical bill reductions.

100. Defendants' conduct also constitutes a violation of FDUTPA under section 501.203(3)(c), Florida Statutes, because it violates laws and rules that proscribe unfair methods of competition and unfair or deceptive acts or practices, including Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as alleged in Count II, and Rule 4-7.21 of the Rules Regulating The Florida Bar, which prohibits a lawyer from using a false, misleading, or deceptive firm name and provides that a firm name, letterhead, business card, or advertisement may not imply that lawyers practice in a partnership when they do not.

101. Defendants' use of the Montero Identifiers in domain names, landing pages, website metadata, SEO keywords, and paid keyword advertising is itself an unfair and deceptive practice. It diverts prospective clients searching for MONTERO to SUAREZ's sole practice and allows SUAREZ to benefit from the goodwill MONTERO developed in his name.

102. Plaintiffs are persons aggrieved by Defendants' violations and are entitled to declaratory and injunctive relief pursuant to section 501.211(1), Florida Statutes.

103. Plaintiffs are persons who have suffered a loss as a result of Defendants' violations, including diverted prospective clients, lost fees, and lost client relationships, and are entitled to recover their actual damages pursuant to section 501.211(2), Florida Statutes. A competitor may bring an action for damages under section 501.211(2), which permits recovery by any "person," not only a consumer.

WHEREFORE, Plaintiffs demand the following:

a. A declaration that Defendants' use of the Montero Identifiers violates section 501.204(1), Florida Statutes;
b. Temporary and permanent injunctive relief pursuant to section 501.211(1), Florida Statutes;

c. Actual damages pursuant to section 501.211(2), Florida Statutes;
d. Attorney's fees and costs pursuant to section 501.2105, Florida Statutes; and
e. All other remedies available at law or equity as this Court deems just and proper.

**<u>COUNT IV – COMMON LAW UNFAIR COMPETITION</u>**
**(Against SUAREZ and S&A)**

104. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 as if set forth fully herein.

105. Through decades of practice, the Montero Identifiers have come to identify MONTERO and the legal services he provides in the minds of the public.

106. SUAREZ and S&A, without authorization, have used the MONTERO trademark and Montero Identifiers in a manner that is likely to cause, and has caused, confusion among the public as to whether MONTERO is affiliated with SUAREZ's sole practice.

107. By this conduct, Defendants have passed off SUAREZ's legal services as services associated with MONTERO and have misappropriated the goodwill associated with MONTERO and the FIRM for the benefit of SUAREZ's sole practice.

108. As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at trial.

109. Defendants' actions were willful and intentional, entitling Plaintiffs to punitive damages upon application to the Court to amend the Complaint to seek such damages.

WHEREFORE, Plaintiffs demand the following:

a. Temporary and permanent injunctive relief;
b. Direct and consequential damages flowing from Defendants' unfair competition; and
c. All other remedies available at law or equity as this Court deems just and proper.

**COUNT V – COMMON LAW INVASION OF PRIVACY BY MISAPPROPRIATION**
**(By MONTERO Against SUAREZ and S&A)**

110. MONTERO realleges and incorporates by reference paragraphs 1 through 74 as if set forth fully herein.

111. Florida recognizes a common law cause of action for invasion of privacy by the unauthorized appropriation of a person's name or likeness for the benefit of another. Section 540.08(7), Florida Statutes, preserves that common law right.

112. SUAREZ and S&A have appropriated MONTERO's name, image, and likeness, including through the Montero Identifiers, for their own commercial benefit by using them to advertise and promote SUAREZ's sole practice, to generate client leads, and to attract clients who are seeking MONTERO and the FIRM.

113. MONTERO never consented to that use. To the extent any prior consent could be argued to have existed, MONTERO expressly revoked it in writing on October 12, 2026.

114. Defendants' use of MONTERO's name and likeness directly promotes SUAREZ's legal services and is not incidental to any news report, commentary, or expressive work.

115. As a direct and proximate result of Defendants' misappropriation, MONTERO has suffered and will continue to suffer damages in an amount to be determined at trial.

116. Defendants' actions were willful and intentional, entitling MONTERO to punitive damages upon application to the Court to amend the Complaint to seek such damages.

WHEREFORE, MONTERO demands the following:

a. Temporary and permanent injunctive relief prohibiting SUAREZ and S&A, and all persons acting in concert with them, from using MONTERO's name, image, or likeness for any commercial or advertising purpose;
b. Damages for the loss and injury sustained;
c. Punitive damages, upon application to the Court to amend the Complaint pursuant to section 768.72, Florida Statutes; and

d. All other remedies available at law or equity as this Court deems just and proper.

**COUNT VI – BREACH OF CONTRACT AND ANTICIPATORY REPUDIATION**
**(By MONTERO and M&A Against SUAREZ and S&A)**

117. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 as if set forth fully herein.

118. The Agreement is a valid and enforceable contract between MONTERO and M&A, on the one hand, and SUAREZ and S&A, on the other. MONTERO and SUAREZ each signed the Agreement individually and on behalf of his own firm.

119. MONTERO and M&A performed all of their obligations under the Agreement, and all conditions precedent to the performance of SUAREZ and S&A have occurred, been performed, or been waived.

120. Under Section 2.0 of the Agreement, SUAREZ and S&A were required to pay MONTERO and M&A a percentage of fees on pre-suit settlements.

121. SUAREZ and S&A breached the Agreement by failing to pay MONTERO and M&A the pre-suit portion of the payments due under Section 2.0 of the Agreement since in or about July 2026 and ceasing to market the FIRM while using the FIRM's domain names, listings, reviews, and goodwill to market SUAREZ's sole practice.

122. SUAREZ admits that he owes MONTERO and M&A the pre-suit portion of the payments due under the Agreement from July 2026 to the present, yet SUAREZ and S&A have not paid it.

123. SUAREZ and S&A also anticipatorily repudiated the Agreement. On multiple occasions, including but not limited to on September 29, 2026 and October 8, 2026, SUAREZ told MONTERO, in person, text messages and emails, that he was terminating the Agreement, that he was rebranding the FIRM, and that he would stop marketing it. SUAREZ then did what he said he

would do. These statements and this conduct were a distinct, unequivocal, and absolute refusal to perform the Agreement.

124. SUAREZ's repudiation relieves MONTERO and M&A of any further duty to tender performance and gives rise to an immediate claim for damages.

125. As a direct and proximate result of the breaches and repudiation by SUAREZ and S&A, MONTERO and M&A have suffered damages, including at least $239,730.53 in unpaid pre-suit payments, the costs SUAREZ was obligated to pay under Section 5.2 of the Agreement, and other damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against SUAREZ and S&A, jointly and severally, for the following:

a. Direct and consequential damages flowing from the breach and repudiation of the Agreement, including all unpaid pre-suit payments;
b. Indemnification and reimbursement of any amount MONTERO or M&A is required to pay because of the failure of SUAREZ to satisfy his obligations under Section 5.2 of the Agreement;
c. Prejudgment interest; and
d. All other remedies available at law or equity as this Court deems just and proper.

**COUNT VII – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**
**(By MONTERO and M&A Against SUAREZ and S&A)**

126. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 as if set forth fully herein.

127. MONTERO and M&A had a business relationship with the Retained Client, under which they have legal rights, evidenced by the Retained Client's written election to be represented by MONTERO and the retainer agreement he signed with M&A.

128. SUAREZ knew of that relationship. The Retained Client told SUAREZ that he had elected to be represented by MONTERO and had signed a retainer agreement with M&A.

129. SUAREZ intentionally and without justification interfered with that relationship. After the Retained Client had elected MONTERO, SUAREZ initiated contact with him, called him in for a meeting at SUAREZ's office, and had him sign an affidavit, notarized by SUAREZ's staff, without explaining why he needed to sign anything.

130. SUAREZ was not acting to protect any legitimate interest of his own. Once the Retained Client elected MONTERO and signed a retainer agreement with M&A, SUAREZ had no interest in that client relationship. SUAREZ's conduct was not legitimate competition for a client who had yet to choose counsel; it was the pursuit of a client who had already chosen, carried out by improper means, while SUAREZ continued to hold himself out under the Suarez & Montero name.

131. As a direct and proximate result of SUAREZ's interference, MONTERO and M&A have suffered damages in an amount to be determined at trial.

132. SUAREZ's actions were willful and intentional, entitling Plaintiffs to punitive damages upon application to the Court to amend the Complaint to seek such damages.

WHEREFORE, Plaintiffs demand the following:

a. Temporary and permanent injunctive relief;
b. Direct and consequential damages flowing from SUAREZ's tortious interference; and
c. All other remedies available at law or equity as this Court deems just and proper.

**COUNT VIII – ACCOUNTING**
**(By MONTERO and M&A Against SUAREZ and S&A)**

133. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 as if set forth fully herein.

134. Under the Agreement, the parties operated their practices under a single shared fictitious name, the FIRM, shared in the fees generated under that name, and allocated costs

between them. The relationship created by the Agreement was one of trust and confidence in which SUAREZ and S&A received fees in which MONTERO and M&A held an interest.

135. SUAREZ and S&A received the fees on the FIRM's pre-suit settlements, a percentage of which belongs to MONTERO and M&A under Section 2.0 of the Agreement. The transactions involve approximately 180 pre-suit matters from July 2026 to the present, and the amounts owed depend on settlement amounts, fees received, costs, and the timing of each recovery.

136. The records of those settlements, the fees received, and the costs incurred are in the exclusive possession and control of SUAREZ and S&A. MONTERO and M&A cannot determine the amounts owed to them without those records.

137. SUAREZ admits that he owes MONTERO and M&A the pre-suit portion of the payments due under the Agreement from July 2026 to the present, but SUAREZ and S&A have not provided an accounting of the amounts owed.

138. Because the transactions are extensive and complicated, and the necessary records are exclusively in the possession of SUAREZ and S&A, Plaintiffs' remedy at law is not as full, adequate, and expeditious as an accounting in equity.

WHEREFORE, Plaintiffs demand the following:

a. An order requiring SUAREZ and S&A to render a full and complete accounting of all pre-suit matters handled under the FIRM name that resolved or settled between July 2026 and the present, all fees received on those matters, and all amounts due to MONTERO and M&A under Section 2.0 of the Agreement;

b. An order requiring SUAREZ and S&A to (i) identify all clients retained and pre-suit matters opened under the FIRM name that remain pending or unresolved, including the current status of each matter; (ii) render a full and complete accounting of all fees received on those matters; and (iii) provide a continuing accounting, on a [quarterly] basis, as each such matter resolves or settles, of all fees received and all amounts due to MONTERO and M&A under Section 2.0 of the Agreement;

c. Judgment in favor of MONTERO and M&A for all amounts found to be due upon the accounting, together with prejudgment interest; and

d. All other remedies available at law or equity as this Court deems just and proper.

**COUNT IX – INJUNCTIVE RELIEF**
**(Against All Defendants)**

139. Plaintiffs reallege and incorporate by reference paragraphs 1 through 74 as if set forth fully herein.

140. This is an action for temporary and permanent injunctive relief brought pursuant to section 540.08(2), Florida Statutes; section 501.211(1), Florida Statutes; 15 U.S.C. § 1116(a); and Florida Rule of Civil Procedure 1.610.

141. Plaintiffs have a substantial likelihood of success on the merits. MONTERO never consented to Defendants' commercial use of his name and likeness; Defendants are using the Montero Identifiers to advertise SUAREZ's sole practice; and Defendants falsely represent to the public that MONTERO is SUAREZ's business partner and the head of his litigation department.

142. Each passing day causes irreparable harm to Plaintiffs. Every prospective client who visits one of Defendants' websites or listings, sees a sign, billboard, or bus bench, or receives a letter or email bearing the Montero Identifiers is told that MONTERO stands behind SUAREZ's sole practice. MONTERO cannot control the quality of the services SUAREZ provides under his name, and the damage to MONTERO's reputation and goodwill cannot be undone once a client has relied on the misrepresentation. The harm is already occurring: FIRM clients who received MONTERO's Election Letter called the former FIRM seeking clarification, and in response SUAREZ feigned knowledge of the Election Letter and required that the client appear for an in-person meeting with him. Moreover, pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to a rebuttable presumption of irreparable harm.

143. Plaintiffs have no adequate remedy at law. The amount of monetary losses that Plaintiffs will sustain due to lost prospective clients, diverted leads, and injury to MONTERO's reputation cannot be calculated with reasonable certainty, particularly where Defendants maintain, by SUAREZ's own account, more than 500 landing pages under separate domain names.

144. The threatened harm to Plaintiffs clearly outweighs any possible harm to Defendants. SUAREZ remains free to practice law and to advertise under his own name, as he has already begun to do with the Google Business Profile. An injunction requires only that SUAREZ stop using another lawyer's name.

145. An injunction serves the public interest. Members of the public who are choosing a lawyer are entitled to accurate information about who is associated with a law practice and who may handle their matters. The Rules Regulating the Florida Bar likewise prohibit misleading firm names, and the Comment to Rule 4-7.21 states that it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.

146. Plaintiffs are prepared to post a bond in an amount the Court deems proper pursuant to Florida Rule of Civil Procedure 1.610(b).

WHEREFORE, Plaintiffs demand judgment against JAIME SUAREZ, individually, SUAREZ & ASSOCIATES, and LAW OFFICES OF SUAREZ & MONTERO for a temporary and permanent injunction, attorney's fees, costs, and such other relief as this Court deems just and proper, including an injunction:

a. prohibiting Defendants, and all persons acting on their behalf or in active concert with them, including employees, agents, and marketing, advertising, web development, and SEO vendors, from using the Montero Identifiers in any medium in connection with the advertising, marketing, solicitation, or provision of legal services;
b. prohibiting Defendants from representing, directly or by implication, that MONTERO is a partner of, associated with, employed by, or available through SUAREZ or S&A, or that MONTERO heads any department of their practice;

c. requiring Defendants to disable the domain names suarezandmontero.com, suarezandmonterocaraccidentlawyerinmiami.com, suarez-montero.com, and suarezmontero.com, and every other domain name or landing page containing any Montero Identifier, and, upon final judgment, to transfer each such domain name to MONTERO;

d. requiring Defendants to periodically provide for all websites containing the Montero Identifiers, the website's back-end data and SEO configurations;

e. requiring Defendants to stop sending correspondence from any address at the @suarezmontero.com and @suarez-montero.com domains and from suarezmonterofax@gmail.com;

f. requiring Defendants, upon final judgment, to cancel or withdraw every fictitious name, assumed name, trade name, or entity registration containing any Montero Identifier, in Florida and in every other jurisdiction, and with any state bar or attorney licensing authority;

g. requiring Defendants to remove from every online listing, directory, and social media account under their control any review, rating, or testimonial earned under the Suarez & Montero name, and prohibiting Defendants from renaming, merging, or repurposing any such listing for SUAREZ's practice;

h. requiring Defendants to remove the Montero Identifiers from all signage, letterhead, envelopes, business cards, retainer agreements, email signature blocks, website metadata, SEO content, and paid advertising, including keyword bidding on the Montero Identifiers;

i. prohibiting Defendants from initiating contact with any client who has elected to be represented by MONTERO concerning that client's choice of counsel, and from obtaining any affidavit or other written statement from any such client concerning that choice, except through Plaintiffs' counsel;

j. requiring Defendants to provide MONTERO's current contact information, (305) 723-1000, to any person who contacts them seeking MONTERO, and to forward to Plaintiffs' counsel any communication intended for MONTERO;

k. requiring Defendants to account for every use of the Montero Identifiers, all related advertising expenditures, and every inquiry, lead, and client obtained through any such use;

l. requiring Defendants to preserve all documents and electronically stored information relating to the use of the Montero Identifiers and to their communications with FIRM clients, including every affidavit or statement obtained from any FIRM client, and to export and preserve all content before removing it; and

m. All other remedies available at law or equity as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable.

Respectfully submitted,

Dated: November 20, 2026

BY: */s/ William R. Trueba*
WILLIAM R. TRUEBA
Florida Bar No.: 117544
AVILA RODRIGUEZ HERNANDEZ MENA GARRO LLP
2525 Ponce De Leon Blvd Ste 1225
Coral Gables, FL 33134-6049
Telephone: (305) 779-3560
Email: wtrueba@avilalaw.com

BY: */s/ Angela T. Puentes-Leon*
ANGELA T. PUENTES-LEON
Florida Bar No.: 0524621
MASPONS ADVISORY SERVICES
232 Andalusia Avenue, Suite 200
Miami, Florida 33134
Telephone: (305) 209-8489
Email: AP@aplfirm.com
apuentes@maspons.com
service@maspons.com

BY: */s/ Ramon A. Abadin*
RAMÓN A. ABADÍN
Florida Bar No.: 707988
RAMON A. ABADIN, P.A.
232 Andalusia Avenue, Suite 200
Miami, Florida 33134
Telephone: (305) 321-4496
Email: rabadin@abadinlaw.com

*Attorneys for Plaintiffs Andres Montero and Montero & Associates*

## VERIFICATION

## DECLARATION OF ANDRES MONTERO

1. I am Andres Montero, individually a Plaintiff in the above-captioned matter, and the President and Registered Agent of MONTERO & ASSOCIATES, also a Plaintiff in the above-captioned matter.

2. I submit this declaration in support of the Verified Complaint for Injunctive Relief and Other Relief.

3. I am over the age of 18 and am fully competent to make this verification.

4. I make this verification on personal knowledge of the facts set forth in the Verified Complaint for Injunctive Relief and Other Relief, except where a fact is expressly alleged upon information and belief, and I am competent to testify to its contents.

5. Under penalties of perjury, I declare that I have read the foregoing Verified Complaint for Injunctive Relief and Other Relief and that the facts stated in it are true, except as to those matters expressly alleged upon information and belief, which I believe to be true.

Executed this 19th day of November, 2026.

ANDRES MONTERO